# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 5648 | DATE | 5/3/2002 |
| CASE TITLE | Mudd-Lyman Sales and Service vs. United Parcel Service, Inc. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☒ Status hearing set for 24 May 02 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ☒ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Cross Motions for Summary Judgment are denied.

(11) ☒ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAY 06 2002 | |
| | Notified counsel by telephone. | date docketed | 47 |
| ✓ | Docketing to mail notices. | CM | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| WAP | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
MAY -3 2002
Judge Harry D. Leinenweber
U. S. District Court

MUDD-LYMAN SALES AND SERVICE CORPORATION,

Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,

Defendant.

Case No. 00 C 5648

Hon. Harry D. Leinenweber

DOCKETED
MAY 0 6 2002

# MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Both Defendant United Parcel Service, Inc. ("UPS") and Plaintiff Mudd-Lyman Sales and Service Corporation ("Mudd-Lyman") bring Cross-Motions for Summary Judgment with regard to the lost shipment of purchase orders placed by Mudd-Lyman to Wagner Spray Tech ("Wagner") through UPS's Next-Day Air service on October 11, 1999.

## BACKGROUND

Mudd-Lyman, an Illinois corporation with its principal place of business in Skokie, Illinois, sells, represents and markets hardware products of manufacturers to retailers and wholesalers. At the annual Ace Trade Show held in October 1999, Mudd-Lyman heavily marketed a variety of power painting and spray-painting products for one of its manufacturing clients, Wagner. The event that year in New Orleans, Louisiana, drew approximately 5,500 Ace Hardware stores across the nation, where Mudd-Lyman procured sales totaling $809,888.00 for Wagner. Plaintiff's, Ex. 2, p. 57.

After returning from New Orleans, plaintiff shipped on October 11, 1999 a three pound package of purchase orders (the "package") via UPS "Next Day-Air" delivery to Jeanette Toensing of Wagner at 1770 Fernbrook Lane, Minneapolis, MN 55447.

The nature of the sales industry compensates Mudd-Lyman based upon percentages of total sales made, depending upon the quantity of the different products sold. Mudd-Lyman claims that its commission on the Wagner sales should have totaled approximately $50,000.00 to $60,000.00. Due to the lost purchase orders, Mudd-Lyman alleges that the total number of each type of product cannot be exactly determined, therefore offers a range of values for its total commission. Plaintiff's Motion for Summary Judgment, Ex. 5, p. 32-33.

UPS is a shipping service corporation organized under the laws of Ohio with its principal place of business in Atlanta, Georgia. Mudd-Lyman and UPS established their relationship on or about February 2, 1995, whereby Mudd-Lyman agreed to use UPS for its shipping needs and paid an initial $200.00 fee. Plaintiff's Motion for Summary Judgment, Ex. 7, p. 32.

Prior to shipping, Mudd-Lyman made no copies of the original Wagner purchase orders, nor did it otherwise duplicate or retain the information recorded on the order forms. Rather, Mudd-Lyman mailed the original purchase order forms in the package. Plaintiff's Exhibit 3, Mudd Dep. p. 19-17; Def. Local Rule 56.1 Statement of Facts, p. 3. Mudd-Lyman then entered the information into the UPS-

installed software on its computers, which generated a daily shipping report confirming the total number, weight and cost of the daily packages shipped by UPS from the Mudd-Lyman location. Mudd-Lyman paid UPS $22.75 for the Wagner shipment that was assigned the shipment tracking #1Z066E490140001501. When placing the order Mudd-Lyman did not pay for any additional coverage for loss or damages. According to UPS, when Mudd-Lyman prepared the package for shipping, it manually filled in a shipping label called a source document which identifies the tracking number and the addresses to and from whom the package was sent. The source document is missing as well.

In transit between Skokie and Minneapolis, the package was either destroyed or lost. The result was that Wagner failed to receive the UPS-mailed purchase orders.

Mudd-Lyman now claims damages for property lost, damage to its reputation and goodwill, and related costs.

UPS counters that it is not liable to Mudd-Lyman for any losses beyond the standard $100.00 claimed in its Service Guide, which states:

> Every package is automatically protected against lost or damage up to $100. You can obtain additional coverage up to $50,000 per package (provided by a third party insurance company). To insure a package having a value greater that $100, show the full value in the Declared Value field as appropriate for you[r] UPS shipping system.
>
> . . .
>
> Unless a greater value is declared in writing in the space provided on the shipping record

> provided to UPS, the shipper declares the released value of each package to be no greater than $100, which is a reasonable value under the circumstances [sic] surround the transportation.

Def. Rule 56.1 Statement of Facts, Fact 33, 35.

UPS alleges that its Tariff also states:

> Whenever property is damaged or lost by UPS in the course of transportation, UPS, on its behalf and as applicable on behalf of the insurance company, will pay at its option either for the damaged or lost goods not to exceed the actual cost or declared value of the property, whichever is lower, or for the cost of repair of the damaged property provided such cost of repair does not exceed the actual cost or declared value of the property.

Def. Rule 56.1 Statement of Facts, Fact 29. UPS alleges that the source document likewise contained the loss limitation.

By failing affirmatively to list the value of the package in the space provided (either electronically or manually), UPS alleges that Mudd-Lyman opted not to accept additional insurance coverage ("value rated system"). UPS Memorandum in Support of Motion to Dismiss, Ex. 3. UPS asserts that a contract of carriage does exist when all the various documents collectively are considered; such as the source document, Tariff, Service Guide and the description of UPS Services at www.ups.com. Def. Rule 56.1 Statement of Facts, Fact 29. Therefore, Mudd-Lyman was put on notice that its failure to declare any excess value of insurance resulted in UPS's limited liability ("released rate liability" or "value rated liability").

Mudd-Lyman argues, however, that UPS never deliberately put them on notice. It denies that any document or record exists which made

Mudd-Lyman aware of UPS limiting liability. UPS has not officially filed its Tariff and the daily document report does not list any reference to the limiting liability clauses. Thus, UPS did not put it on notice. Therefore, the released rate doctrine cannot apply. UPS counters that the source document put it on notice and that any further duty on its part to send Mudd-Lyman a physical copy of UPS's Tariff rested upon Mudd-Lyman's affirmative duty to ask first. Without such a request, UPS had no duty to mail its customers copies of its Tariff.

## ISSUES

The central issue here is whether or when Mudd-Lyman was put on notice of the clause limiting UPS's liability to the $100 maximum set forth in its Tariff and Service Guide.

## DISCUSSION

### *Jurisdiction*

Jurisdiction by the district court is proper based on diversity. 28 U.S.C. § 1332. On February 8, 2001, this Court denied Mudd-Lyman's request to remand based solely on diversity jurisdiction and withheld discussion of original jurisdiction for another day.

UPS again argues that in addition to diversity jurisdiction, the Court also retains original jurisdiction based upon 1) the Carmack Amendment's federal preemption in interstate commerce and 2) federal common law. The Court disagrees.

While the Courts have universally conferred federal jurisdiction over most ground carrier-customer suits due to the need for stability

and uniformity in the trade of goods and services between States, air transportation is a different animal. *See* the Federal Aviation Act; The Airline Deregulation Act of 1978; *see also Roberts Distributor, Inc. v. Federal Express Corp.* 917 F.Supp. 630, 636 (1996) *citing, e.g., Western Union Telegraph Co. v. Esteve Bros. & Co.*, 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094 (1921)(the Interstate Commerce Act); *MCI Telecommunications Corp. v. Teleconcepts, Inc.* 71 F.3d 1086, 1093-96 (3rd Cir. 1995)(the Federal Communications Act). Since the Federal Aviation Act creates no right of private action for air transport, it cannot be a source of federal jurisdiction. *Fournier v. Lufthansa German Airlines,* 2002 WL 215457 *4 (N.D. Ill.). Normally, where federal acts preempt the state, federal courts are granted original jurisdiction. But Mudd-Lyman's claims are for a breach related to privately ordered conditions in a contract between parties that happened to occur in the air.

### *Analysis*

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). In determining whether a genuine issue of material fact exists, the evidence must create more than "'some metaphysical doubt as to the material facts.' . . . [As] a mere scintilla of evidence in support of the nonmovant's position is insufficient . . . [A] party will be successful in opposing [the

and uniformity in the trade of goods and services between States, air transportation is a different animal. *See* the Federal Aviation Act; The Airline Deregulation Act of 1978; *see also Roberts Distributor, Inc. v. Federal Express Corp.* 917 F.Supp. 630, 636 (1996) *citing, e.g., Western Union Telegraph Co. v. Esteve Bros. & Co.*, 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094 (1921)(the Interstate Commerce Act); *MCI Telecommunications Corp. v. Teleconcepts, Inc.* 71 F.3d 1086, 1093-96 (3rd Cir. 1995)(the Federal Communications Act). Since the Federal Aviation Act creates no right of private action for air transport, it cannot be a source of federal jurisdiction. *Fournier v. Lufthansa German Airlines,* 2002 WL 215457 *4 (N.D. Ill.). Normally, where federal acts preempt the state, federal courts are granted original jurisdiction. But Mudd-Lyman's claims are for a breach related to privately ordered conditions in a contract between parties that happened to occur in the air.

### *Analysis*

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). In determining whether a genuine issue of material fact exists, the evidence must create more than "'some metaphysical doubt as to the material facts.' . . . [As] a mere scintilla of evidence in support of the nonmovant's position is insufficient . . . [A] party will be successful in opposing [the

motion] only when it presents 'definite, competent evidence to rebut the motion.'" *Albiero v. City of Kankakee* 246 F.3d 927, 932 (2001) citing *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000); see also, *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-257 (1986). In addition, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *Nieman Marcus Group, Inc. v. Quast Transfer, Inc.*, 1999 WL 436589 (N.D. Ill.). Overall, where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine" issue for trial. *Mechning v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988).

### *Contracts of Carriage*

Prior to the Airline Deregulation Act of 1978, carriers were required to publish their tariffs with appropriate federally administered regulating bodies in order to prevent tariff rate discrimination. Such public notice then becomes incorporated into any agreement between the shipper and carrier. *See Aero Trucking, Inc. v. Regal Tube Co.*, 594 F.2d 619, 621 (7th Cir. 1979) citing *Pittsburgh, Cincinnati, Chicago & St. Louis Railway Co. v. Fink*, 250 U.S. 577, 581 (1919). The Airline Deregulation Act of 1978, 49 U.S.C. § 1551, altered the requirements for the airline industry. In an effort to privatize the market in 1978, the Civil Aeronautics Board (the "CAB") issued regulations exempting air carriers from

tariff filing requirements. *See* Regulation ER-1080, *Operating Rules for All-Cargo Carriers and Domestic Cargo Transportation by Section 401 and 418 Carriers,* 14 C.F.R. Part 291 (1979); *see also Neal v. Republic Airlines, Inc.,* 605 F.Supp. 1145, 1148 (1985).

*Republic Airlines* explains:

> All the pre-1979 CAB-filed tariff did in that respect was to create a system of constructive notice to shippers (somewhat akin to the recording system for documents affecting real estate – or aircraft titles.) While Regulation ER-1080 – whose aim was to leave the setting of air carriage tariffs to market forces – meant air carriers could no longer *presume* a shipper's notice of CAB-approved tariffs, it did not bar the carriers themselves from providing shippers with the requisite notice of declared value rates.

*Id.* at 1148.

Therefore, the issue centers on notice. Was Mudd-Lyman put on notice of UPS's limiting liability clause in the source document, Service Guides and Tariff located on the Internet? In essence, did Mudd-Lyman have notice?

Judge Shadur in *Republic Airlines* reasoned in a similar dispute with an air carrier, who failed to deliver the remains of the decedent on a particular date, that the parties should look to the air bill (source document) as determinative. *Republic Airlines,* 605 F.Supp. at 1149. The absence of the source document between the parties and the failure of UPS to prove up the specific contents of the source document leaves open a question of fact that survives summary judgment review. UPS did not adequately explain the absence

of the evidence of what the source document used at the time of the loss actually contained. What UPS produced was a source document used two years after the fact. Mudd-Lyman disputes the contents of the source document UPS claims was used at the time of the loss. When viewing all facts in light of the non-moving party, UPS has not determinatively answered when or whether notice was exactly given. Thus a material question of fact remains unanswered as to when or whether Mudd-Lyman received notice of the limited liability clause of the UPS service agreement.

## CONCLUSION

Thus, for the reasons stated above, the Cross-Motions for Summary Judgment are denied.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: May 3, 2002