Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5648 | **DATE** | 11/26/2002 |
| **CASE TITLE** | Mudd-Lyman Sales and Service Corp. vs. United Parcel Service, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff's Motion to Strike and Motion for Summary Judgment are DENIED. Defendant's Motion for Summary Judgment is GRANTED and this case is DISMISSED pursuant to Federal Rule of Civil Procedure 56.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 27 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 99 |
| ✓ | Mail AO 450 form | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | 02 NOV 26 PM 5:24 | date mailed notice | |
| | | Date/time received in central Clerk's office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RECEIVED
NOV 2 ? 2002

Judge Harry D. Leinenweber
U.S. District Court

MUDD-LYMAN SALES AND SERVICE
CORPORATION,

        Plaintiff,

v.

UNITED PARCEL SERVICE, INC.,

        Defendant.

Case No. 00 C 5648

Hon. Harry D. Leinenweber

FILED
NOV 26 2002

Judge Harry D. Leinenweber
U.S. District Court

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant United Parcel Service Inc.'s ("UPS") Motion for Summary Judgment. Also before the Court is Plaintiff Mudd-Lyman Sales and Service Corp.'s ("Mudd-Lyman") Cross-Motion for Summary Judgment and Motion to Strike.

### BACKGROUND

Mudd-Lyman, an Illinois corporation with its principal place of business in Skokie, Illinois, sells and markets hardware products to retailers and wholesalers. UPS is a shipping service corporation organized under the laws of Ohio with its principal place of business in Atlanta, Georgia. At a trade show held in October 1999, Mudd-Lyman marketed a variety of power-painting and spray-painting products on behalf of one of its manufacturing clients, Wagner Spray Tech ("Wagner"). The trade show drew approximately 5,500 Ace Hardware stores from across the nation, and Mudd-Lyman procured purchase orders for Wagner products totaling

$809,888.00. On October 11, 1999, Mudd-Lyman shipped a package containing those purchase orders via UPS "Next Day Air" delivery to Wagner's office in Minneapolis. Mudd-Lyman prepared the package for shipment via UPS by entering the shipping information into the UPS-installed software on its computers. When placing the order, Mudd-Lyman did not declare the value of the contents or pay for any additional coverage for loss or damages. Prior to shipping, Mudd-Lyman made no copies of the purchase orders, nor did it otherwise duplicate or retain the information recorded on them. UPS picked up the shipment, but the package never arrived at its destination in Minneapolis and UPS was unable to determine its fate.

Mudd-Lyman claims that its commission on the Wagner sales would have totaled approximately $50,000.00 to $60,000.00, and that UPS is liable for this entire amount due to its negligence in losing the package. UPS contends that, because Mudd-Lyman failed to request additional coverage for the package or otherwise declare a value in excess of $100.00, by the terms of the limitation on liability set forth in its Service Guide, UPS is not liable to Mudd-Lyman for any losses beyond the $100.00. In its briefs, Mudd-Lyman does not contend that UPS failed to provide adequate notice of its limited liability, but instead argues that this case must be decided under the substantive law of Georgia, which would, according to Mudd-Lyman, require summary judgment in its favor.

## **MOTION TO STRIKE**

In the Rule 56.1 materials submitted in support of its Motion for Summary Judgment, UPS repeatedly references a chart purporting to list the total number of packages shipped by Mudd-Lyman via UPS for the years 1999-2002. This chart is copied from the August 30, 2002 affidavit of Pat Spang ("Spang"), a UPS employee. Spang states in his affidavit that the chart is based on his review of UPS's records for the Mudd-Lyman account for those years. During discovery, Mudd-Lyman specifically requested from UPS "any UPS account statements [or] documents reflecting account activity with Mudd-Lyman." As this chart was not previously disclosed in this form during discovery, Mudd-Lyman requests that all references to it be stricken from the record pursuant to Federal Rule of Civil Procedure 37.

Under Federal Rule of Civil Procedure 37(a), a "party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Rule 37(a)'s "sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Salgado v. General Motors Corp.*, 150 F.3d 735, 739-43 (7th Cir. 1998). UPS's justifications for failing to disclose this summary of Mudd-Lyman's account information sooner are not particularly compelling.

However, Mudd-Lyman does not dispute the accuracy of the information, and it is difficult to see how Mudd-Lyman is prejudiced by the introduction of this summary of its account activity. Mudd-Lyman's Motion to Strike is therefore DENIED.

## CROSS-MOTIONS FOR SUMMARY JUDGMENT

### *Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). A court must "review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 964 (7th Cir. 1998). Nevertheless, the party who bears the burden of proof on an issue may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact that requires trial. *Warsco v. Preferred Technical Group*, 258 F.3d 557, 563 (7th Cir. 2001).

## DISCUSSION

### *Jurisdiction*

In an earlier opinion in this case, the Court expressed some doubt as to whether this controversy was properly before the Court under its federal question jurisdiction pursuant to 28 U.S.C. §

1331. At that time, the Court allowed the case to proceed based on its conclusion that the Court could exercise jurisdiction over this matter based on diversity of citizenship, and that neither 49 U.S.C. § 14706(a)(1)("Carmack Amendment") nor federal common law controlled the determination of the issues presented. *See Mudd-Lyman Sales and Service Corp. v. United Parcel Service, Inc.*, 2002 WL 908310, at *3 (N.D. Ill. May 6, 2002). Subsequent review of relevant case law has caused the Court to reconsider some aspects of that opinion, and now leads the Court to a somewhat different conclusion. The Court's prior opinion was correct in its determination that this dispute does not fall within the scope of the Carmack Amendment. *See Shorts v. United Parcel Service*, 1999 WL 118791, at *3-4 (N.D. Tex. Feb. 25, 1999). It is equally clear, however, that the controlling preemptive statutes, 49 U.S.C. §§ 14501(c)(1) and 41713(b)(4)(A), "preclude the enactment or enforcement of state laws related to the 'price, route or service' of motor carriers and inter-modal ground/air carriers such as UPS." *Vieira v. United Parcel Service, Inc.*, 1996 WL 478686, at *1 (N.D. Cal. Aug. 5, 1996)(citation omitted); *Shorts*, 1999 WL 118791, at *4. Federal common law occupies the field, and a dispute relating to limitation of liability in an inter-modal carrier contract of carriage, like the one presently before the Court, is properly ajudicated pursuant to the Court's federal question jurisdiction. *See Pierre v. United Parcel Service, Inc.*, 774 F.Supp. 1149, 1151 (N.D. Ill. 1991); *United States Gold Corp. v. Federal Express Corp.*, 719 F.Supp. 1217, 1224 (S.D.N.Y. 1989); *Angela Cummings,*

*Inc. v. Purolator Courier Corp.*, 670 F.Supp. 92, 94 (S.D.N.Y. 1987)(cited with approval in an unpublished opinion of the Seventh Circuit, *Milam Audio Co. v. Federal Express Corp.*, 41 F.3d 1511 (Table), 1994 WL 602716, at *1 (7th Cir. Nov. 2, 1994)).

### Federal Common Law

Mudd-Lyman argues that, pursuant to a choice-of-law provision contained in the UPS software license agreement, this dispute must be resolved applying the substantive law of the state of Georgia, regardless of any conflict with preemptive federal law. As a general rule, the purpose of a choice-of-law clause is simply to determine that the law of one State rather than that of another State will be applicable. *See Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 488 (1989) (Brennan, J., dissenting). *"Choice-of-law clauses simply have never been used for the purpose of dealing with the relationship between state and federal law."* *Id.* at 490 (emphasis added). Through the Supremacy Clause, U.S. CONST. Art. VI, cl. 2, the law of any state includes federal law, and federal law is as much the law of a state "as laws passed by the state legislature." *Howlett v. Ross*, 496 U.S. 356, 367 (1991). To the extent that a contractual choice-of-law provision provides that the law of a specific state shall apply, this includes federal law as well as state law. *Fidelity Fed. Sav. & Loan Assn. v. De la Cuesta*, 458 U.S. 141, 152 (1982). When, as here, specific preemption

provisions evince a clear congressional intent to occupy the field, the parties' contractual choice of state law may not be construed so as to avoid federal preemption in favor of a conflicting state law. *See Fidelity*, 458 U.S. at 152-59. *See also* Zhaodong Jiang, *Federal Arbitration Right, Choice-of-Law Clauses and State Rules and Procedures*, 22 SW. U. L. Rev. 159, 175-77 (1992). *Cf. Volt*, 489 U.S. at 477-479 (allowing a state procedural rule chosen by the parties to govern when doing so was in harmony with the goals and policies of the federal law and there was nothing indicating a congressional intent to occupy the entire field).

As stated above, federal courts have consistently held state laws addressing limitation of liability in interstate contracts of carriage to be preempted by federal common law. *See, e.g., Vieira*, 1996 WL 478686, at *1; *Kesel v. United Parcel Service, Inc.*, 2002 WL 102606, at *3 (N.D. Cal. Jan. 17, 2002). Because the preemption provisions of 49 U.S.C. §§ 14501(c)(1) and 41713(b)(4) express a clear congressional intent to occupy the entire field of price and services in interstate contracts of carriage, state law cannot be used by Mudd-Lyman to impose liability on UPS.

### *UPS's Limitation of Liability*

Under the federal common law that has developed around this issue, common carriers and inter-modal shippers like UPS may "limit their liability for injury, loss, or destruction of [parcels] on a 'released valuation basis,' whereby, in exchange for a low carriage rate, the [shipper] is deemed to have released the carrier from

liability beyond a stated amount." *Kesel*, 2002 WL 102606, at *4. Under the released value doctrine, "if a carrier wishes to enforce a limited liability provision, its contract must offer the shipper (1) reasonable notice of limited liability, and (2) a fair opportunity to purchase higher liability." *Read-Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1198 (9th Cir. 1999). Applying this standard to the case at bar, it is clear that UPS's limitation of liability meets this standard.

The following facts are undisputed. UPS's On-Line Office Software 6.0 ("UPS software") was used by Mudd-Lyman to ship the package in question. The UPS software was provided to UPS customers in a tri-fold cardboard brochure which is shrink-wrapped in plastic. The package includes a seal which must be broken before the CD-ROM containing the software can be removed. The seal states: "By breaking this seal, you indicate your agreement to the terms and conditions of the software license agreement in the red folder to the right. Please read the license agreement before installing the software." Section 2 of the license agreement states:

> Section 2. *Terms of Shipment*. By giving a package to UPS for carriage, Customer agrees to all terms and conditions stated herein and to the terms and conditions contained in the UPS Service Guide(s), Service Explanation, Rate Chart(s), and any applicable tariff in effect at the time of a shipment (collectively "Service Guide").

Moreover, when the CD-ROM is placed in a customer's computer to install the program, an on-screen version of the license agreement

appears. The on-screen version of the license agreement is identical to the hard copy included in the red folder. Before the program can be installed, the customer must click "Yes" in response to the question "Do you accept all the terms of the preceding license agreement." The UPS Service Guide referenced in the license agreement states:

> *Declared Value*
> Every package is automatically protected against loss or damage up to $100. You can obtain additional coverage up to $50,000 per package (provided by a third-party insurance company). To insure a package having a value greater that $100, show the full value in the Declared Value field as appropriate for your UPS shipping system. See the Current Rate chart for Declared Value Charges.

The shipping manifest detailing Mudd-Lyman's shipments for October 11, 1999 confirms that Mudd-Lyman used its UPS software to ship the package at issue in this case.

Mudd-Lyman does not argue that it was deprived of either reasonable notice of UPS's limited liability or a fair opportunity to purchase higher liability. In fact, Mudd-Lyman concedes that the terms of the license agreement became binding upon the parties when the seal on the UPS tri-fold brochure was broken and the UPS software was installed on Mudd-Lyman's computers. Rather, the briefs submitted by Mudd-Lyman focus solely on its argument that a choice-of-law provision in the software license agreement requires that Georgia law be applied to this dispute, and that application of Georgia law would dictate that summary judgment be entered in Mudd-Lyman's favor. As discussed above, the Court now holds that

this case is properly ajudicated under its federal question jurisdiction and the issues in dispute are controlled by federal common law.

The Court finds that Mudd-Lyman accepted the terms of UPS's limitation of liability through the breaking of the shrinkwrap seal and by its on-screen acceptance of the terms of the software license agreement. Mudd-Lyman was thereby provided with reasonable notice of UPS's limited liability and was given a fair opportunity to purchase higher liability. *See Shorts*, 1999 WL 118791, at *5; *Viera*, 1996 WL 478686, at *1. *Cf. Pro CD Inc. v. Zeidenberg*, 86 F.3d 1447, 1452 (7th Cir. 1996) (holding that both shrinkwrap licences and acceptance of licence terms as precondition to loading software provide sufficient notice to purchasers of the terms of the license).

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Strike and Motion for Summary Judgment are DENIED. Defendant's Motion for Summary Judgment is GRANTED and this case is DISMISSED pursuant to Federal Rule of Civil Procedure 56.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: November 26, 2002